# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| BEHROOZ MOHAZZABI, | Case No. 2:18-cv-02137-RFB-VCF |
| Plaintiff, | **ORDER** |
| v. | |
| WELLS FARGO, N.A., | |
| Defendant. | |

## I.  INTRODUCTION

Before the Court are two interrelated motions: Defendant Wells Fargo, N.A's (Wells Fargo) Motion to Compel Arbitration, and Defendant Wells Fargo's Motion to Seal its Reply. ECF Nos. 4, 16. For the following reasons, the Court grants both motions.

## II.  PROCEDURAL BACKGROUND

Plaintiff Behrooz Mohazzabi ( "Mohazzabi") sued Wells Fargo on or around October 8, 2018 in the Eighth Judicial District Court for the state of Nevada. ECF No. 1-1. He alleges that $20,000 was unlawfully withdrawn from his checking account with Wells Fargo Bank on October 28, 2016. Mohazzabi further alleges that Wells Fargo employees failed to properly investigate the incident. Mohazzabi asserts breach of contract, breach of implied covenant of good faith and fair dealing, quantum meruit, conversion, elder abuse in violation of section 41.1395 of the Nevada Revised Statutes ("NRS"), fraudulent concealment, deceptive trade

practices in violation of NRS section 598, and negligent hiring, training, supervision and retention claims in his complaint.

Wells Fargo removed the case to federal court on November 6, 2018 and filed its motion to compel arbitration on that same date. ECF Nos. 1, 4. A response and reply were filed. ECF Nos. 11, 15. Wells Fargo also filed a motion to seal its reply. ECF No. 16.

### III. FACTUAL BACKGROUND

Mohazzabi visited a Wells Fargo branch on or about October 3, 2016, and signed up for a checking account. While at the bank, he signed a Consumer Account Application. Above the Consumer Account Application, just above Mr. Mohazzabi's signature, it states in relevant part that:

> **I have received a copy of the applicable account agreement and the privacy policy (each may be amended from time to time) and agree to be bound by their terms**. I also agree to the terms of the dispute resolution program described in the foregoing agreements. **Under the dispute resolution program, our disputes will be decided before one or more neutral persons in an arbitration proceeding and not by a jury trial or a trial before a judge**. (emphasis in the original)

In addition to the Consumer Account Application, Wells Fargo alleges that Mohazabbi received a copy of a Consumer Account Agreement ("CAA"). While the parties dispute whether Mohazzabi ever received a copy of the CAA, they do not dispute the contents of the agreement itself. The CAA contains a provision requiring arbitration of "any unresolved disagreement," before the American Arbitration Association.

Mohazzabi maintains in a declaration submitted with the Court that he never received the CAA and that no one explained to him that he was waiving his right to a jury trial. Wells Fargo argues that Mohazzabi consented to have the CAA and other disclosure documents emailed to him. Wells Fargo states that its internal records indicate that Mohazzabi clicked on the consent

button to accept disclosure documents electronically. Furthermore Wells Fargo notes that its bankers cannot complete the new account opening process until the customer accepts and acknowledges electronic receipt of the CAA and the other disclosure documents.

Finally, Wells Fargo moves to seal the documents it submitted to the Court regarding Mohazzabi's account, on the grounds that the documents contain Mohazzabi's personally identifiable information and information that is proprietary to Wells Fargo.

### IV. LEGAL STANDARD

#### a. Motion to Compel Arbitration

The Federal Arbitration Act ("FAA") provides that a "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA provides two methods for enforcing arbitration: (1) an order compelling arbitration of a dispute; and (2) a stay of pending litigation raising a dispute referable to arbitration. 9 U.S.C §§ 3, 4.

"By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985). The FAA limits the district court's role to determining (1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of that agreement to arbitrate encompasses the claims at issue. Nguyen v. Barnes & Noble Inc., 763 F.3d 1171, 1175 (9th Cir. 2014). "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24–25 (1983). Thus, "[t]he standard for demonstrating arbitrability is not a high one; in fact, a district court has little discretion to deny an arbitration motion, since the Act is phrased in mandatory terms." Republic of Nicar. v. Std. Fruit Co., 937 F.2d 469, 475 (9th Cir. 1991). In fact, "Section 2 of the FAA requires courts to enforce agreements to arbitrate according to their terms, in order to place an arbitration agreement

upon the same footing as other contracts and to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate." O'Conner v. Uber Technologies, Inc., 904 F.3d 1087, 1093 (9th Cir. 2018) (internal quotations and citations omitted). However, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT & T Technologies, Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986) (internal quotation omitted).

The determination of whether a particular issue should be decided by the arbitrator rather than the court is governed by federal law. Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). However, when deciding whether the parties agreed to arbitrate a certain matter, courts generally apply ordinary state law principles of contract interpretation. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995).

Section 3 of the FAA provides for a stay of legal proceedings whenever the issues in a case are within the reach of an arbitration agreement. 9 U.S.C. § 3. Although the statutory language supports a mandatory stay, the Ninth Circuit has interpreted this provision to allow a district court to dismiss the action. See Sparling v. Hoffman Const. Co., 864 F.2d 635, 638 (9th Cir. 1988). A request for a stay is not mandatory. Martin Marietta Aluminum, Inc. v. Gen. Elec. Co., 586 F.2d 143, 147 (9th Cir. 1978).

### b. Motion to Seal

Courts have long recognized "a general right to inspect and copy public records and documents, including judicial records and documents." Kamakana v. City & Cty. of Honolulu, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 & n.7 (1978) (quotation marks omitted). However, this right is not absolute. Id. There is a "strong presumption in favor of access" to dispositive motions or their attachments, and a party seeking to seal such documents bears the burden of overcoming this presumption by providing a compelling and fact-based reason for the document to be sealed. Id. (citations and quotation marks omitted)."[I]f the court decides to seal certain judicial records [attached to dispositive motions], it must base its decision on a compelling reason and articulate the factual

basis for its ruling, without relying on hypothesis or conjecture." Id. at 1179 (citation and quotation marks omitted). Compelling reasons include sensitive personal information contained in the records. Id. at 1182.

**V.     DISCUSSION**

Mohazzabi tries to argue both that he did not consent to arbitration, and that even if the Court found that he did, that the arbitration provision is unenforceable on procedural and substantive unconscionability grounds. The Court disagrees. Based on the evidence submitted by the parties, the Court finds that Mohazzabi and Wells Fargo entered a binding contract to arbitrate, and that the contract is not unconscionable under Nevada state law.

The Court first addresses the question of whether the parties consented to arbitration. It is undisputed that Mohazzabi signed a consumer account application that stated above the signature block that he understood that he was consenting to alternative dispute resolution. The Court also finds compelling the evidence that Wells Fargo submitted from its internal database indicating that Mohazzabi had access to and received documents, including the CAA, after providing his email address to Wells Fargo, and clicked "I Accept" on a consent button acknowledging receipt and agreement to the terms contained therein. The Court finds that this is sufficient evidence that Mohazzabi received and consented to the arbitration agreement contained within the CAA.

Under Nevada law, an arbitration clause is procedurally unconscionable "when a party lacks a meaningful opportunity to agree to the clause terms either because of unequal bargaining power, as in an adhesion contract, or because the clause and its effects are not readily ascertainable upon a review of the contract." KJH & RDA Investor Group, LLC v. Eighth Judicial Dist. Court of State ex rel. Cty. of Clark, 281 P.3d 1192 (Nev. 2009) (internal citations omitted). "The gist of this element 'focuses on two factors: oppression and surprise.'" Id. "An adhesive contract is "a standardized contract form offered to consumers . . . on a 'take it or leave it' basis, without affording the consumer a realistic opportunity to bargain." Burch v. Second Judicial Dist. Court of State ex. rel Cty. of Washoe, 49 P.3d 647, 649 (Nev. 2002). "The distinctive feature of an adhesion contract is that the weaker party has no choice as to its terms." Id.

Adhesive contracts are increasingly common for consumers in the marketplace today. KJH & RDA Investor Group, LLC, 281 P.3d, at 1192 (noting that the average consumer "faces adhesive contracts as a reality of obtaining basic goods and services"). However, "[a]n adhesion contract need not be unenforceable if it falls within the reasonable expectations of the weaker or "adhering" party and is not unduly oppressive." Obstetrics and Gynecologists William G. Wixted, M.D. v. Pepper, 693 P.2d 1259, 1261 (Nev. 1985).

In this case, the Court finds that the CAA and its corresponding arbitration provision was an adhesive contract. The contract is clearly proforma and prospective customers are not truly given a realistic opportunity to negotiate its terms. Indeed, Wells Fargo itself explains that prospective customers wishing to open an account with the bank could not do so unless the customer acknowledged receipt of and agreed to the terms of the CAA. To expedite the new account process, Wells Fargo employees required customers who did not elect to receive hard copies of the CAA to provide their email addresses on their mobile devices during the account opening process. If the prospective customer had not already consented to receipt of documents electronically, the Wells Fargo employee could not open the new bank account until they clicked "accept." At no point in this process are prospective customers told they can negotiate terms of the contract. The requirement that customers who opt not to receive physical copies of the CAA have their mobile devices with them may also put pressure on prospective customers to agree to terms hurriedly. These are all factors that indicate that Wells Fargo's CAA is an adhesive contract, and because the consumer lacks a meaningful opportunity to agree to the clause terms, is procedurally unconscionable.

However, while the Court does find that the agreement was an adhesive contract and procedurally unconscionable, the Court does not find that the agreement was substantively unconscionable. Under Nevada law, a contract may be substantively unconscionable when it contains oppressive terms or is one-sided. Gonski v. Second Judicial Dist. Court of State ex rel Washoe, 245 P.3d 1164, 1169 (Nev. 2010) overruled on other grounds by U.S. Home Corp. v. Michael Ballestreros Trust, 415 P.3d 32 (Nev. 2018). The language regarding agreement to arbitration is contained in the consumer application that customers sign and is also in the

accompanying CAA. The CAA describes the arbitration procedures in clear language that provides both consumers and the bank with an opportunity to arbitrate. ECF No. 4-1. ("If your banker is unable to resolve your dispute, you agree that either Wells Fargo or you can initiate arbitration as described in this section."). The agreement requires each party to bear its own costs. Id. The arbitration provision does include a class action waiver, but the Supreme Court has held that such provisions are not per se unconscionable and that state law cannot render them so. AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 348-49 (2011). The Court thus does not find the contract inherently oppressive or one-sided under Nevada law. Because the Court is required to find that a contract is both procedurally and substantively unconscionable in order to find it unconscionable as a whole, and the Court does not find that the arbitration agreement is substantively unconscionable, the Court will not void the arbitration agreement on grounds of unconscionability. Greystone Nevada, LLC v. McCoy, 416 P.3d 198 (Nev. 2018).

The Court notes that the arbitration agreement provides that any dispute, including disputes as to the arbitration agreement's "meaning, application or enforcement," must be submitted to arbitration. The Court thus finds that this arbitration clause is broad enough to require that all of Mohazzabi's claims are arbitrated. The Court therefore exercises its discretion as articulated by the Ninth Circuit in Sparling v. Hoffman Const. Co., Inc., 864 F.2d 635, 638 (9th Cir. 1988) to dismiss all claims in this action.

Furthermore, the Court also finds that personally sensitive information is contained in Wells Fargo's reply to its motion to compel arbitration. Compelling reasons being found, the Court will permit Wells Fargo to file its exhibits to its reply brief to its motion to compel arbitration under seal.

## VI. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant Wells Fargo, N.A.'s Motion to Compel Arbitration, (ECF No. 4), and Motion to Seal Reply (ECF No. 16) are granted.

**IT IS FURTHER ORDERED** that all claims in this case are dismissed as the Court finds that they are subject to mandatory arbitration.

The Clerk of the Court is instructed to close the case.

DATED: September 25, 2019.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**